Mary Poague OSBORNE, Plaintiff,

v.

Mary Maxwell CAMPBELL and Jean Campbell Hershey, Defendants.

No. 872.

United States District Court
S. D. West Virginia,
Bluefield Division.

May 3, 1965.

---

Wade H. Ballard, III, Peterstown, W. Va., for plaintiff.

Harold B. Eagle, Hinton, W. Va., for defendants.

CHRISTIE, District Judge:

This is a diversity of citizenship case brought under 28 U.S.C.A. § 1332. Its object is to obtain judicial determination of the validity of a purported testamentary will of one Crete Houston Campbell, late a resident of Monroe County, West Virginia.

The historical facts giving rise to the action revolve around two conflicting instruments purporting to be the last Wills and Testaments of the testator, who died the 27th day of June, 1963. The first instrument, dated October 20, 1931, naming plaintiff as its principal beneficiary, was admitted to probate *ex parte* by the Clerk of the County Court of Monroe County on July 1, 1963, and the second instrument, dated March 13, 1961, naming the defendants as its joint and equal beneficiaries, was admitted to probate *ex parte* by the Clerk of the same court on July 3, 1963. The plaintiff seeks to overthrow the March 13, 1961 instrument on the ground that the testator lacked testamentary capacity and was unduly influenced by the defendants to execute it. An issue *devisavit vel non*, a jury trial and an accounting are prayed for.

Requisite jurisdictional amount is conceded, but complete diversity is challenged. The complaint alleged that the plaintiff is a resident of the state of Virginia and that the defendants are residents of the state of West Virginia. However, the Marshal was unable to effect service of process on defendant Jean Campbell Hershey in the state of West Virginia, and his return shows that she is a resident of Winchester, Virginia. The plaintiff now concedes this to be a fact. The defendants moved to dismiss for lack of complete diversity,[1] and after the court had indicated its intention to grant the motion, but before a formal order to that effect was entered, the plaintiff moved to amend process and complaint by dropping Jean

---

1. 28 U.S.C.A. § 1332; 1 Barron & Holtzoff, Federal Practice and Procedure, Sec. 26, p. 145; Wright, Federal Courts, Sec. 24, p. 69.

Campbell Hershey as a dispensable defendant in order to preserve diversity. Both defendants opposed the motion, contending that Jean Campbell Hershey has a vital interest in the controversy which will be affected by its final determination and that the adjustments of all rights and complete justice to all parties cannot be done in the case unless she is properly before the court.

Thus, the narrow issue now before the court is whether Jean Campbell Hershey is a dispensable or an indispensable party to the action.

Rule 19, Federal Rules of Civil Procedure, 28 U.S.C.A., states that all persons having a "joint interest" shall be made parties and be "joined" on the same side as plaintiffs or defendants. While the rule does not use the term "indispensable party," it does use one of the tests or elements applied by the courts in determining whether or not a party is indispensable, i. e., "persons having a joint interest." The case of Shields v. Barrow, 17 How. 129, 130, 136, 58 U.S. 129, 130, 136, 15 L.Ed. 158, 160, is the landmark case in the field and is most frequently cited by the courts. There, Mr. Justice Curtis, in discussing who are indispensable parties, said that they were such

> "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and in good conscience."

Applying this general rule in the context of the factual situation here, we find in 2 Barron & Holtzoff, Federal Practice & Procedure Section 513.5 (1961) that,

> "The heirs at law of a deceased are necessary, but not indispensable, in an action to *construe* his will, or to impose constructive trusts on the various legacies. *All the benefici-*

> *aries are indispensable parties, however, in an action to set aside the will.*" (Emphasis added)

It is significant, therefore, to note that a distinction is drawn between an action to "construe" and one to "set aside." The reason for this is that, in an action for construction, the validity of the whole instrument is not under attack and ordinarily jurisdiction and some relief, by severance of issues or parties, can be preserved and granted to some of the parties without adversely affecting the rights of other parties; whereas, in an action to impeach, the instrument and jurisdiction must either stand or fall in totality as to all parties. In applying this doctrine to the instant case, it must be recognized that the *interests* of the co-beneficiaries in the will under attack and who are presently co-defendants to this suit are *joint* and there could be no separate adjudication of the rights of one without affecting the rights of the other. The purpose of the suit here is to *impeach*, to utterly destroy, the 1961 instrument, rather than to *construe* it. If the relief here sought by the plaintiff were granted as prayed for, Jean Campbell Hershey would take nothing from the substantial estate of the testator, and the 1931 instrument would be left standing as his only subsisting testamentary disposition and through which the plaintiff would, as its principal beneficiary, get the estate to the complete exclusion of Mrs. Hershey and her co-beneficiary and co-defendant, Mary Maxwell Campbell. Moreover, if Jean Campbell Hershey may be dropped as an unnecessary and dispensable party, then by the same token her co-defendant and co-beneficiary, Mary Maxwell Campbell, may be dropped also and for the same reason, since their interests in the subject-matter of the suit are joint, coextensive and identical. The mere circumstances of residence could not be said to change the substantive rights of either under the will sought to be impeached. Thus, counsel for the plaintiff would be left in the awkward

position of arguing against an obvious fact, for it must be accepted as axiomatic that if one of these co-beneficiaries is dispensable to the suit, the other is also. No other rationalization would appear plausible. Then, too, if Mrs. Hershey is dropped as a party defendant because she has no such rights in the suit as to require her presence, as contended for by counsel for the plaintiff, would not her co-beneficiary and co-defendant, Mary Maxwell Campbell, have the right to be dismissed from the suit for the same reason, since her interest in the subject-matter is joint and identical to that of Mrs. Hershey? Such an eventuality would leave plaintiff with a defendantless suit and the objective of her complaint thereby completely frustrated. Yet, notwithstanding this result, plaintiff's counsel has earnestly argued that Mrs. Hershey has not such a vital interest in this suit as to make her an indispensable party thereto. With this, in all due deference, the Court cannot agree. For the fact seems inescapable that, if the 1961 will under which Mrs. Hershey claims is impeached, she will thereby have, in this suit, in this court, in her absence, been deprived of the one-half undivided interest in a substantial bounty, but for which she would have otherwise retained. Surely therefore, she has such a "joint interest" with her co-defendant and co-beneficiary in the will under attack as to entitle her to be before the court and to be heard therein. She thus must be found to be an indispensable party to the litigation in whose absence full justice could not be done without "affecting" her interests.

This reasoning is not only in accord with the authorities above cited, but is consonant with that of our own Fourth Circuit, as expressed in Commercial Casualty Ins. Co. v. Lawhead, 62 F.2d 928 at 932 and 933. There the court quoted with approval from its earlier case of Halpin v. Savannah River Electric Co., 4 Cir., 41 F.2d 329, 330, to show the distinction between (1) proper parties; (2) necessary or conditionally necessary parties; and (3) indispensable parties. Discussing these classifications of parties, the court pointed out that the first class consists of formal parties who, while not interested in the controversy between the immediate litigants, have an interest in the subject-matter which may be *conveniently* settled in the litigation, and their absence is no ground for dismissal. In the second class are those who have an interest in the controversy, but one which is *separable* from that of the parties before the court and which will *not be affected* by a decree made in their absence. These should be made parties if possible, in order that there may be a complete determination in one suit of all questions involved; but if they are beyond the jurisdiction of the court, or if their joinder would result in ousting the jurisdiction, the court may in its discretion proceed without them. In the third class are those who have an interest in the controversy of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience, and unless these are made parties, the court will not entertain the suit.

The defendant, Jean Campbell Hershey, clearly falls within the "third class," first, because she has such an interest in the controversy that a final decree cannot be made without affecting that interest; second, because her interest is inseparable from that of her co-defendant; third, because she would not be bound by a decree made in her absence and a final determination of the suit would not be *res judicata* as to her; and fourth, because to adjudicate her rights in her absence would not only be inconsistent with equity and good conscience, but a violation of due process.

**It should also be noted that a
federal court exercising jurisdiction over
a case grounded on diversity of citizenship must apply the pertinent state law.
28 U.S.C.A. § 1332; Erie R. R. Co. v.
Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82
L.Ed. 1188. In diversity actions, state
law determines the *nature* of the interest
a party has in a controversy, while the
rules and federal decisions construing
them control the *procedural* aspect thereof. Wright, Federal Courts, Section 70,
p. 260 (1963); Strachan v. Nisbet, 202
F.2d 216; Kennedy v. Falk, 230 F.2d 362
(both 7th Cir.).

In the impeachment of a will, the state
substantive law must be applied. But, as
we have seen, the procedural aspects of
such a proceeding are governed by federal rules of procedure; however, there
is found to exist here essentially the same
requirements in state procedure as in
federal. See 20 Michie Jurisprudence
(Wills), Section 63, where, in interpreting the state statute, it is said,

> "If the plaintiffs in the chancery
> suit to set aside a will are the devisees under a former will of the
> testator seeking to set aside a later
> will, which had been admitted to probate and which revoked the will under which the plaintiffs claimed, *the
> heirs of the decedent should be made
> parties defendants as well as those
> parties that claim under the will of
> the decedent, which had been probated.*" (Emphasis added)

See also Dower v. Church, 21 W.Va. 23,
and Rule 19, W.Va. Rules of Civil Procedure.

By reason of the foregoing authorities, it is found that complete diversity is lacking and that requisite jurisdiction cannot be preserved by dropping the defendant Jean Campbell Hershey, because she has a joint and nonseverable interest in the suit with her
co-defendant Mary Maxwell Campbell,
making her an indispensable party thereto. This is true under both federal and
state law and procedure. So viewed, the
motion of the defendants to dismiss for
lack of diversity must be granted, and
the motion of the plaintiff to amend must
be denied.