*In re* ESTATE OF FRED C. LOESCH, Deceased (Beverly Horvath *et al.,* Petitioners-Appellees, v. Dolores Loesch, Respondent-Appellant.

First District (2nd Division)  No. 84—1007

Opinion filed June 28, 1985.

Stephen B. Ruben, of Stephen B. Ruben & Associates, of Hinsdale, for appellant.

Terrence E. Leonard, Chartered, of Chicago, for appellees.

JUSTICE BILANDIC delivered the opinion of the court:
Petitioner-appellee Beverly Horvath filed a petition to contest the

purported last will of her father, Fred C. Loesch. The petition named the respondent-appellant, Dolores Loesch, the decedent's widow, as a respondent in her capacity as the executor only. After the petition was dismissed, Horvath filed an amended petition, but the court declared a mistrial because not all of the necessary parties—the other legatees—had been joined.

Horvath filed a second amended petition, and the other legatees filed separate appearances. After a trial, a jury found that the will was invalid because the decedent lacked testamentary capacity and because Dolores Loesch had exerted undue influence. Loesch filed a post-trial motion that sought to dismiss the entire proceedings, alleging that the trial court lacked jurisdiction because all the necessary parties had not been joined. Loesch also asked, in the alternative, that a new trial be granted because the petitioner had violated an order *in limine* and because of allegedly erroneous jury instructions. The trial court denied all motions, and Loesch appealed.

On appeal, we are asked to decide the following, whether: (1) the trial court lacked jurisdiction; (2) the court erred in not granting a new trial because the petitioner violated the order *in limine*; and (3) the court erred in failing to submit respondent's proffered instruction.

Respondent's husband, Fred C. Loesch, died testate on October 9, 1978, after several months of illness. He was survived by his widow, the respondent Dolores Loesch, and two daughters from a previous marriage, the petitioner Beverly Horvath and her sister Bonnie Hill. On November 8, a will that purported to be the decedent's last will and testament was admitted to probate. Respondent was appointed the executor. On the same day, petitioner Horvath filed a petition to set aside the will pursuant to section 8—1 of the Probate Act (Ill. Rev. Stat. 1977, ch. 110½, par. 8—1).

The petition alleged that the will was invalid because the decedent lacked testamentary capacity and was unduly influenced by his wife, Dolores. The purported will left the entire estate worth approximately $1,000,000 to respondent, with the exception of separate $25,000 gifts to petitioner, Hill, and Frances Gordon (a/k/a Frances D. Karpez and Nancy Karpez), a friend of respondent's. Under a previous will executed soon after the decedent's marriage to respondent, Horvath and Hill would have shared equally in the estate.

The original petition named Dolores Loesch as a respondent in her capacity as executor only. Loesch filed a motion to dismiss in lieu of an answer as both the executor and an individual. After a series of motions and continuances, the court dismissed the petition in February 1980. The dismissal order provided that petitioner could file an

amended petition within 30 days.

Horvath, however, did not file her amended petition until almost two years later, after she had been given leave to do so. The amended petition again named Dolores Loesch as the only respondent in her capacity as the executor. On April 12, 1982, the trial court ordered a mistrial because not all of the necessary parties had been joined as required by section 8—2 of the Probate Act. (Ill. Rev. Stat. 1981, ch. 110½, par. 8—2.) Bonnie Hill and Frances Gordon, legatees under the purported will, had not been joined.

After the mistrial, petitioner filed her second amended petition on April 23, 1983. The petition named as respondents Dolores Loesch, as executor, and Hill and Gordon. Hill filed an appearance and admitted all the allegations of the complaint; Gordon filed an appearance and an answer that denied the allegations.

The trial began on October 11, 1983, and a jury found that the purported will was invalid because the decedent lacked capacity and because of undue influence. Respondent filed a post-trial motion to set aside the proceedings or, in the alternative, for a new trial. The court denied the motion, and respondent appealed.

I

■■ Respondent's first point of error is that the trial court lacked jurisdiction because not all parties had been joined within the six-month period allotted by the Probate Act. The Act requires that the "representative and all heirs and legatees of the testator must be made parties to the proceedings." (Ill. Rev. Stat. 1981, ch. 110½, par. 8—2.) Specifically, respondent argues that Hill and Gordon were not joined as parties within six months after the second amended petition was filed. Respondent relies primarily in *In re Estate of Spaits* (1983), 117 Ill. App. 3d 142, 453 N.E.2d 39.

*Spaits* involved a petition that was timely filed but that did not contain any reference to the executor. The executor filed a special and limited appearance objecting to the jurisdiction of the court by alleging that the petition should be dismissed because the executor had not been made a party. The trial court denied petitioner's motion to amend and dismissed the suit.

The appellate court affirmed. It reasoned that section 8—1 of the Probate Act required that the executor be made a party to the proceedings, and the fact that the executor knew of the proceedings did not obviate the statutory requirement. *In re Estate of Spaits* (1983), 117 Ill. App. 3d 142, 147-48.

Since the briefs were filed, however, *Spaits* has been reversed by

the supreme court. (*In re Estate of Spaits* (1984), 104 Ill. 2d 431, 472 N.E.2d 784.) The supreme court held that "the contest of a will is a justiciable matter within the contemplation of article VI, section 9, of the Constitution of 1970. We hold further that the jurisdiction of the circuit court stems not from the statutory provision, but is conferred by article VI, section 9, of the Constitution of 1970. The exercise of that jurisdiction, however, requires that the petition to contest the will be filed within six months after its admission to probate." 104 Ill. 2d 431, 434.

The court also cited with approval its holding in *Nupnau v. Hink* (1965), 33 Ill. 2d 285, 211 N.E.2d 379, in which the court held that heirs could be joined as party defendants after the expiration of the statutory period because " '[t]he object of this kind of proceeding is not to secure a personal judgment against individual defendants but simply to set aside a will \*\*\*.' " *In re Estate of Spaits* (1984), 104 Ill. 2d 431, 435, quoting *Nupnau v. Hink* (1965), 33 Ill. 2d 285, 288, 211 N.E.2d 379.

The *Spaits* court also adopted the ruling of *In re Estate of Mears* (1982), 110 Ill. App. 3d 1133, 443 N.E.2d 289, *appeal denied* (1983), 93 Ill. 2d 541. The appellate court in *Mears* stated, "a will contest is not an action against any person to secure a personal judgment but is a *quasi in rem* proceeding simply to set aside the will." 110 Ill. App. 3d 1133, 1139.

*Spaits* is controlling here. Even if one were to hold that personal jurisdiction were required, the court had jurisdiction because both Hill and Gordon filed appearances, and under Illinois law one submits to jurisdiction unless one files a special and limited appearance. (Ill. Rev. Stat. 1983, ch. 110, par. 2—301(a).) The respondent herself filed her motion to dismiss as both "individually and as the Executor of the Estate of Fred C. Loesch." Under any theory, the trial court had jurisdiction to decide the proceedings, and the trial court did not err in denying the respondent's motion.

## II

■ Respondent's next point of error is that the petitioner committed reversible error when she referred to an incompetency proceeding in her opening statement in violation of the court's *in limine* order. The circumstances are these. Fred C. Loesch was found in his home in a coma by Frances Gordon on May 20, 1978. After being admitted to the hospital, he was diagnosed as suffering from shock brought about by his diabetic condition. Two days later, Dolores Loesch filed a petition to have herself appointed conservator of both

Fred Loesch's person and estate. In filing the petition, Dolores signed an affidavit, which read:

> "A reputable citizen of Illinois [Dolores Loesch] on oath states [that] Fred Loesch, whose place of residence is 8 West Burlington Avenue, LaGrange, Illinois, is incompetent and incapable of managing his estate and person \*\*\*."

The court appointed J. Sterling Mortimer as Fred Loesch's guardian *ad litem*. After interviewing him in the hospital, Mortimer reported to the court that Fred Loesch was lucid and that no conservator was needed. The proceedings were dropped, and there was never any adjudication of incompetency.

Before trial, Dolores Loesch moved to block any reference to the incompetency proceedings. The court ruled that the petitioner could ask the respondent whether she signed the affidavit but that the petitioner could not introduce the affidavit itself into evidence.

During his opening statement, however, counsel for petitioner said:

> "Now, two days after Mr. Loesch was admitted into the hospital, he was admitted on Saturday, two days later on the following Monday Dolores swore under oath, filed in this court, the courtroom, perhaps—filed and stated that her husband was incompetent and incapable of managing his estate or his person."

Counsel for respondent objected, but the court neither sustained nor overruled, saying instead, "Proceed." Later, counsel for respondent, in his opening remarks, said, "I will tell you [the jury] now that [the] evidence will clearly show that at no time was this man ever adjudged incompetent. In fact, there is an order that says to the contrary, a court order by this Court of this jurisdiction." During trial, respondent called Mortimer, who testified about his interviews with decedent and the report that he made to the court.

Respondent claims that petitioner's reference to the affidavit is reversible error. A motion *in limine* is "a pretrial motion which seeks an order excluding certain evidence, and references to such evidence, on the ground that its admission would violate some ordinary rule of evidence." (*Department of Public Works & Buildings v. Roehrig* (1976), 45 Ill. App. 3d 189, 194, 359 N.E.2d 752.) For a violation of an order to be the basis of a new trial, the order must be specific and the violation clear. (*Reidelberger v. Highland Body Shop, Inc.* (1979), 79 Ill. App. 3d 1138, 1144, 399 N.E.2d 247.) Where the likelihood of prejudice is great, the violation is reversible error. *Shehy v. Bober* (1979), 78 Ill. App. 3d 1061, 1068, 398 N.E.2d 80.

■ Assuming, *arguendo,* that petitioner violated the order *in limine* by referring to the incompetency proceeding during opening statement, the error was harmless. The respondent herself violated the order in her opening statement and compounded the error by asserting that a court had adjudicated the decedent to be competent. The evidence, however, shows clearly that there was never any adjudication of either competency or incompetency. Respondent's remark was erroneous because she never offered any evidence to support her allegation. Respondent called guardian *ad litem* Mortimer, who testified that in his opinion the decedent was lucid. Mortimer's testimony served to rebut any inference that the jury drew from petitioner's remarks. In sum, any error was harmless, and a new trial is not warranted.

### III

■ Respondent's last point is that the trial court erred in not tendering to the jury the following proffered instruction:

"Although you may consider the fact that an incompetency petition was filed against Mr. Loesch, you are instructed that even if an Order adjudicating incompetency had been made and a conservator appointed, you are instructed that a person who has had a conservator appointed for him can still make a valid will if he has the mental capacity to do so. The test for mental capacity to make a will is stated elsewhere in these instructions."

The court refused to submit the instruction because it was confusing and because there had never been any adjudication. Respondent contends that the court's refusal to give the instruction was prejudicial because the jury was able to infer a lack of testimentary capacity from the mere fact that incompetency proceedings had been initiated.

A court has discretion in giving an instruction, and the refusal to give one must be so prejudicial that a new trial is required. (See, *e.g., Comper v. Jones* (1980), 80 Ill. App. 3d 850, 860, 400 N.E.2d 475.) Respondent concedes that there was no adjudication and that no conservator was appointed because the proceedings were dismissed voluntarily. As a result, respondent was proposing in her proffered instruction a set of facts that were not supported by the evidence.

Although a party has a right to have a jury instructed on her theory, provided that there is sufficient evidence for the instruction, it is reversible error for a court to instruct a jury on an issue that is unsupported by the evidence. (*Falkenthal v. Public Building Com.* (1982), 111 Ill. App. 3d 703, 709, 444 N.E.2d 498, *appeal denied*

(1983), 94 Ill. 2d 552.) Moreover, the court was certainly within its discretion in concluding that the instruction—framed in the alternative—would be confusing to the jury.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P.J., and HARTMAN, J., concur.